UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SV GOPALRATNAM,                                              Case No. 13-cv-618-pp
HEMALATHA GOPALRATNAM,
THE ESTATE OF ARUN GOPALRATNAM, and
AMERICAN FAMILY MUTUAL INSURANCE CO.,

                          Plaintiffs,

v.

HEWLETT-PACKARD CO.,
ABC INSURANCE CO.,
SAMSUNG SDI CO., LTD., and
DYNAPACK TECHNOLOGY CORP.,

                          Defendants.

---

**ORDER GRANTING DEFENDANT HEWLETT-PACKARD'S MOTION FOR ATTORNEY'S FEES (DKT. NO. 64)**

---

      The plaintiffs filed this wrongful death and personal injury suit in June 2013. Dkt. No. 1. Prior to the case being reassigned to this court in December 2014, predecessor judge Charles N. Clevert, Jr. had been presiding for some ten months over a dispute as to whether jurisdiction properly lay in the Eastern District of Wisconsin with regard to third-party defendant Samsung SDI Co., Ltd. The dispute was generated by SDI's February 3, 2014 motion to dismiss for lack of personal jurisdiction. See Dkt. No. 24. On April 17, 2014, Judge Clevert granted defendant Hewlett-Packard Co.'s request to conduct discovery on the issue of whether jurisdiction was proper, Dkt. No. 37, and ordered that the parties should complete that discovery by May 30, 2014, id. at 7.

1

## I. Background

### A. The Arguments

On October 20, 2014, defendant Hewlett-Packard (HP) filed a motion pursuant to Fed. R. Civ. P. 37(b)(2)(C), asking the court to sanction SDI "in connection with SDI's conduct throughout jurisdictional discovery ordered by this court." Dkt. No. 64. The motion alleged that SDI "repeatedly failed to comply in good faith with the Court's order, forcing HP to engage in extensive motion practice to obtain the ordered discovery and injecting significant delay into the litigation." Id.

In its supporting memorandum, HP alleged that Judge Clevert had given HP forty-three days (April 17, 2014 through May 30, 2014) to conduct an investigation into whether SDI (as a Korean corporation) lacked sufficient contacts with the Eastern District of Wisconsin. Dkt. No. 64-1 at 2-3. HP argued that it promptly served interrogatories, requests for production and a notice of a Rule 30(b)(6) deposition on SDI, and that SDI represented that it fully intended to comply with those discovery requests. Id. at 3. HP further alleged that SDI had agreed to produce a witness to testify at the 30(b)(6) deposition. Id. HP contended that, despite these representations, SDI was uncooperative. It maintained that, in one instance, SDI provided a response to a document production request which simply asserted blanket objections, without producing a single responsive document. It asserted that "SDI's answers to interrogatories more often than not failed to provide any information requested." Id. HP argued that after SDI claimed HP's document

2

requests were too broad, rather than working with HP to narrow the request, SDI refused to cooperate, forcing HP to file a motion to compel. Id. Less than twenty-four hours before the parties were to appear at a telephone hearing with Judge Clevert, SDI produced 140 pages of documents. And with regard to SDI's assurance that it would produce a 30(b)(6) witness, HP asserts that on the eve of the expiration of the jurisdictional discovery period, SDI refused to produce a witness. Id. at 4.

At the telephone hearing with Judge Clevert (which took place on July 8, 2014), the court informed SDI that SDI was construing the jurisdictional issue "too narrowly," and that it needed to "give factual and complete answers." Dkt. No. 52. HP argued that even after this admonition, "SDI delayed." Dkt. 64-1 at 4. Finally, when another court hearing loomed, HP argued that SDI "did a complete about-face and announced it would withdraw its motion for lack of personal jurisdiction." Id.

On November 11, 2014, SDI filed a response. Dkt. No. 67. SDI responded that HP had noticed the 30(b)(6) deposition to take place in Milwaukee, Wisconsin on May 27, 2014. (The deposition notice indicated that the deposition would begin at 10:00 a.m., presumably Central Standard Time. Dkt. No. 41-2 at 2.) SDI indicated that its counsel had contacted counsel for HP and proposed that the deposition take place either by Skype or telephone, because the deponent lived in Korea. Id. at 2-3. SDI proposed, however, that because Korea was fourteen hours ahead of Milwaukee, the deposition take place at 10:00 a.m. *Korean* time, which would have been 8:00 p.m. the evening of

3

May 26, 2014, Milwaukee time. Id. As it happens, May 26, 2014 was the Memorial Day holiday in the United States. HP refused to acquiesce to the requested time change, but, according to SDI, "offered no other alternative." Id. SDI asserted that it never *refused* to produce a 30(b)(6) witness; it just moved for a protective order asking Judge Clevert either to limit HP's discovery to the written interrogatories or permit the deposition to take place during Korean business hours on May 27 (or at such other time as the court might designate). Id. See Dkt. No. 58 (joint revised motion for protective order).

With regard to the documentary discovery, SDI argued that HP exceeded the number of interrogatories allowed by Fed. R. Civ. P. 33(a)(1), and that the scope of those interrogatories was too broad. SDI argued that it had contacted HP's counsel more than once to discuss this issue, but that the parties never were able to resolve the issue. Dkt. No. 67 at 3. SDI argues that it responded to the first twenty-five interrogatories, without objection from HP. Id. at 3-4. With regard to the document requests, SDI argues that it timely responded, by objecting to them on the grounds of scope and relevance. Id. at 4. Later, it provided supplemental responses to "more narrowly focused requests for documents," and provided everything it had that it believed responded to those more narrow requests. Id. SDI denied that Judge Clevert ever found that SDI had "evaded" its discovery obligations; rather, he'd indicated that SDI had construed the legal issue too narrowly, "and that SDI would need to provide complete responses to the document requests as written by a date certain." Id.

4

Not only was SDI faced with responding to the document requests, but it asserts that HP again sought to depose an SDI representative in Milwaukee, "within a relatively short period of time, at substantial cost to SDI." Id.

Accordingly, SDI argued, it

> conducted a cost-benefit analysis of whether it should continue to dispute the personal jurisdiction of the court and spend an inordinate amount of time and money sorting through thousands of documents to determine whether any of those documents fell within the broad scope of any of HP's requests, or simply stipulate to jurisdiction for purposes of this action only and defend the action on its merits. Determining that it would be more cost-effective to defend the action, SDI instructed its counsel to stipulate to jurisdiction. Since that time, SDI has filed its answer to the third party complaint and submitted its initial disclosures to counsel as required by the federal rules.

Id. at 4-5.

HP filed a reply on November 25, 2014. Dkt. No. 73. HP argued that it specifically tailored its discovery requests to the issues Judge Clevert had identified as relevant, and that SDI could not claim to be protecting itself from overly-broad discovery requests when those requests were expressly contemplated by Judge Clevert's order. Id. at 2-3. It argued that neither SDI's responses to the discovery requests nor its withdrawal of its motion to dismiss were made in good faith. Id. at 3.

On March 16, 2015, this court held a hearing on HP's motion for fees and costs. Dkt. No. 77. At the hearing, counsel for HP repeated the arguments HP had made in its papers. Counsel for SDI responded that SDI had followed

5

had Judge Clevert's order, and the rules of civil procedure, to the letter. SDI argued that it had been willing to make its witness available on the date HP had demanded; it was not SDI's fault that HP failed to calculate the time difference between Milwaukee and Korea, or the fact that holding the deposition during Korean business hours on May 27 would result in the deposition taking place on a holiday in the Central time zone. Counsel argued that once Judge Clevert had ordered SDI to respond to what it considered to be overly-broad discovery demands, it had gone through its cost-benefit analysis, and concluded that continuing to pursue its objection to jurisdiction would be too costly. Id. at 2.

B.     The Communications

The docket contains an e-mail chain between counsel for the disputing parties. Dkt. No. 43-6. This exchange took place over a period of a month, between April 23 and May 23, 2014, and involved both e-mail communications and phone calls.

The e-mail exchange began with an April 23, 2014 e-mail from counsel for HP to counsel for SDI, attaching the interrogatories. Id. at 5. Next was a May 5, 2014 e-mail from HP, noticing the 30(b)(6) deposition for May 27, but stating, "[P]lease let us know ASAP if that date will not work so we can try our best to reschedule it within the confines of the order." Id. at 4. A follow-up e-mail from HP a few hours later indicated that HP "would be amenable to moving this deposition to sometime in June if you are able to obtain a brief

6

extension from the Court, especially given that the date currently noticed for the deposition is right after Memorial Day." Id.

Counsel for SDI responded on May 15, 2014 and indicated that, "[a]s we have discussed," SDI planned to honor the deposition notice. Id. at 3. Counsel asked about the possibility of conducting the deposition by phone or Skype, and stated, "Logistically, we need to work out a few issues. There is a 14 hour time difference. 8pm on 5/26 is 10 am on 5/27 in South Korea. We can make a deponent available then." Id.

The next e-mail from HP's counsel is dated Saturday, May 17, 2014 at 8:07 p.m. It indicated that "we are going to need to seek relief from the Court" regarding the jurisdictional discovery deadline, "so that we can schedule the SDI 30(b)(6) deposition at a date and time that will (1) work for all of the parties involved and (2) give us sufficient time to analyze SDI's discovery responses and document production in advance of the deposition." Id. The e-mail goes on to say that "[SDI's] offer to present your witness via Skype at 8 p.m. on Memorial Day is a non-starter . . . ." Id. It indicates that

> [e]ven if all of the parties were able to make that time work—and it is my understanding that some of us have conflicts due to the holiday—we have no way of knowing when you will be responding to our discovery, whether you intend to object to any of the requests, what documents you will be producing, whether all of those documents will be in English, and if we will have sufficient time to review and analyze those documents and prepare for the deposition in advance of the 26th.

Id. The e-mail notifies SDI that HP plans to ask the court for an additional thirty days to complete the discovery, and concludes as follows: "Can you

7

please let me know ASAP if you would be willing to join in our motion for a short extension of the jurisdictional discovery deadline and/or if you will be objecting to the same? We intend to file something early next week." Id.

A couple of hours later, at 10:01 p.m. on May 17, 2014 counsel for SDI sent an e-mail stating simply, "We will respond in a timely fashion to the discovery and will honor your deposition notice." Dkt. No. 43-8 at 1. Counsel for HP responded (either that same evening or the next day—Sunday, the 18th), asking whether the statement that SDI planned to "honor the deposition notice" meant that there would be an SDI representative in Milwaukee at 10:00 a.m. on May 27. Id. at 5. On May 18, 2014 at 2:06 p.m., counsel for SDI replied,

> No. I am saying we will produce our 30b(6) witness as previously indicated where the law requires in South Korea if you or someone else on your team wants to travel there or by Skype or phone. Assume when it was noticed, you did not take into account the time difference. It seems fair that the witness would be able to he [sic] deposed during the work day there rather than our work day, which is why I proposed that we do it at 8pm at the end of the Memorial Day weekend. Is there an alternate proposal?

Id.

On May 20, 2014, counsel for HP sent a message stating,

> I assume by your filing a motion that you are unwilling to actually confer directly with us on the topic of your client's deposition as I requested multiple times. That is unfortunate because I think that we could hash out an agreement or something pretty close to one without bothering the Court with the issue.

8

Dkt. No. 43-6 at 1. The message goes on to discuss various issues that SDI's counsel thought could be hashed out or resolved in an in-person discussion, including dates, times, document production, method of deposing the witness, and whether an interpreter would be needed. Id.

On May 22, 2014 at 7:11 p.m., counsel for HP e-mailed counsel for SDI. Dkt. No. 43-9 at 1-2. The message stated,

> Overall, I think we are pretty close to an agreement. Here is what [HP] propose[s]:
>
> \*      SDI is given a three-week extension (to June 13) to respond to HP's Requests for Production;
> \*      SDI withdraws its pending expedited motion for protective order;
> \*      HP and SDI file a joint motion to extend the period of personal jurisdiction discovery for three months to August 29 (which should allow the parties time to meet and confer regarding any potential scope issues, review documents produced, translate any documents produced in Korean (if necessary), and work out a schedule for deposition(s));
> \*      Upon allowance of the motion to extend, HP withdraws its current notice of deposition. In any event, the deposition will not take place on 5/27/14; and
> \*      Parties continue to confer about the location and time of the deposition and try to reach agreement around the concept of it being done audio visually beginning in the early evening WI time.
>
> Please run this by your client and let us know ASAP if we have an agreement, as we would like to get a motion regarding the jurisdictional discovery deadline on file by the end of the day tomorrow.

9

On May 23, 2014 at 10:12 a.m., counsel for SDI sent the following message to counsel for HP:

> . . . [W]e are willing to work with you to see if we can arrive at a reasonable compromise. The deposition notice needs to be withdrawn and we are not in agreement that we will ever produce a witness, as SDI has not done that before in a jurisdictional dispute. Maybe this case will be different, and we are certainly open to discussion, but are not agreeing to produce anyone now. You withdraw the notice and we withdraw the motion to quash. We can produce answers to the interrogatories today, or Tuesday at the latest (with the understanding that their content will be subject to an agreed upon confidentiality agreement). Additionally, the extension to August is way too long. We will support a joint motion to extend discovery as set forth below . . . .

Dkt. No. 43-9 at 1. The message goes on to lay out a discovery schedule that would result in document production by June 30, and proposes that the parties "postpone their arguments on the deposition issue" until HP reviews the discovery responses, and "address the deposition issue" after SDI produces the documents. Id.

On Friday, May 23 at 11:02 am, counsel for HP sent a message to one, and only one, of the attorneys for SDI. Dkt. No. 43-9 at 3. The message indicated that counsel "really d[id] not think" it was a good idea to force HP to go to court and tell Judge Clevert how SDI had repeatedly indicated an intent to cooperate, "only to get to Friday of Memorial Day weekend and say, 'we are not in agreement we will ever produce a witness' and you will get your documents next month?" Id. After explaining what he would tell Judge Clevert should such a hearing take place, HP's counsel suggested extending the

10

discovery deadline to July 30, 2014, having SDI produce its documents by June 20, 2014, and conducting the deposition in some audio-visual fashion on an agreed-upon date at between 6:00 and 10:00 p.m. Wisconsin time. Id.

This prompted counsel for SDI to respond, at 2:18 p.m. on May 23, 2014 that he'd concluded that a deposition did not make sense, because it did not "appear" that SDI had any connection to Wisconsin, and that SDI had sold no products in Wisconsin, to date. Id. at 3. Counsel indicated that SDI either could answer the discovery requests, and "go forward with our motion to quash," or "deal with the deposition issue later if you really need it after seeing discovery responses." Id. Counsel agreed to recommend to his client everything HP had proposed, "except committing to the deposition." Id. He stated that if HP needed a deposition "after the paper discovery," he'd submit HP's recommendations regarding the deposition arrangements to his client. Id.

### C. The Discovery Demands and Responses

SDI's answers to HP's interrogatories are on the docket; they were provided to HP on May 23, 2014 at 4:18 p.m. Dkt. No. 43-4. SDI started by making a general objection to the interrogatories. Id. at 3. It then objected to many of the specific interrogatories, and denied having information to answer some of them. In a couple of instances, it referred HP to information it attached to its motion to dismiss for lack of jurisdiction.

The requests for production also are on the court's docket. Dkt. No. 43-5. HP asked for things such as "[a]ll documents reflecting, evidencing and/or pertaining to the sale of SDI lithium ion battery cells in the State of Wisconsin,"

11

"[a]ll documents reflecting, evidencing and/or pertaining to statements, as found on SDI's website, that it is the top supplier of lithium ion batteries in the world," and "[a]ll documents reflecting, evidencing and/or pertaining to SDI conducting business in the State of Wisconsin." Id. at 5. HP made twenty-five requests in all. Id. at 1-12. SDI provided its responses on May 23, 2014 at 5:17 p.m. Id. at 1. It objected to every request except two. In response to request number 24, "[a]ll documents reflecting, evidencing and/or pertaining to SDI conducting business in the State of Wisconsin," SDI responded that it was searching its records for such documents, but didn't expect to find any. Id. at 12. In response to request number 25, "[a]ll documents identified, referenced or consulted in SDI's Answer to Interrogatories," SDI responded, "None."

**II.    Analysis**

Fed. R. Civ. P. 37(c)(1) provides that if a party "fails to provide information or identify at witness as required by Rule 26(a) or (e)," the party won't be allowed to use that information. In addition, the rule allows a court to "order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). The rule's language is discretionary; the court "may" order payment of fees.

HP argues that the court should exercise its authority to sanction because SDI's actions "clearly amount[] to a failure to obey the Court's order." Dkt. No. 64-1 at 5. It argues that SDI acted in bad faith, by serving "incomplete and evasive answers to interrogatories and responses to requests for

12

production of documents," by "refus[ing] to assist in narrowing the scope of the requests to acceptable limits," by "refus[ing] to produce a 30(b)(6) designee to testify at a deposition," and by refusing to produce documents until "the hearing on HP's motion to compel was imminent . . . ." Id. at 5-6. SDI responds that it *did* provide answers to the interrogatories and requests for production; it simply interposed valid objections. Dkt. No. 67. And it responds that it finally decided to withdraw the objection to jurisdiction when it realized that Judge Clevert was not going to narrow the discovery requests, and concluded that it would be too expensive to continue to pursue the objection. Id.

A review of the evidence on the docket supports the conclusion that the parties escalated a calendaring error to an epic sniping battle. The calendaring error was the parties' seeming failure to calculate, when HP selected May 27, 2014 at 10:00 a.m. Central Time for the date of the 30(b)(6) deposition, that 10:00 a.m. Central Time would be 2:00 a.m. the next day Korean time. When HP originally proposed the date (on April 23, six or so days after Judge Clevert granted the request to conduct discovery), its counsel asked SDI to tell him whether the date would work. SDI's counsel responded that SDI was willing to move the deposition to a date in June if HP would ask the court for an extension of the discovery deadline, and specifically noted that the date HP had selected was "right after Memorial Day." Up to this point, it appears that the parties were responding to each other in a reasonable fashion.

13

There must have been some telephone exchanges over the next three weeks, however, because on May 15, 2014 SDI no longer was discussing motions to extend time or setting deposition dates in June. Instead, it proposed to conduct the deposition on May 26, 2014 at 8:00 p.m. Central—in other words, at 8:00 p.m. the evening of Memorial Day. HP's response was less than congenial, calling the proposal a "non-starter," and stating that the date would not work regardless of the holiday because HP did not know when SDI would provide the written discovery.

From this point on, the communications go from chilly to frigid. SDI responded that it would "honor" the deposition as noticed. When HP asked whether that meant conducting the deposition on May 27 at 10:00 a.m. CST, SDI responded with the equivalent of, "It most certainly does not." HP came back with a threat to file a motion to compel, SDI then accused HP of refusing to communicate, and HP offered a schedule which included an offer that it would withdraw the deposition notice if the court granted a joint motion to extend the discovery deadline. SDI responded by demanding that HP must withdraw the deposition notice, and stating that SDI might not ever produce a witness to testify, regardless of the date. HP then threatened to reveal this shift in position to Judge Clevert, at which point—May 23, 2014, a week before the deadline Judge Clevert had imposed to complete jurisdictional discovery—SDI decided to withdraw its objection to jurisdiction. It was also at this point that SDI responded to the interrogatories and requests for production—albeit with little or no information.

14

The parties' behavior explains the belief among lawyers that judges hate discovery disputes. This court finds that generalization too broad—in the court's experience, it isn't that judges hate discovery disputes. It is that judges dislike unnecessary discovery disputes that involve unprofessional (some might say puerile) behavior by the lawyers or the parties. When the parties fail to courteously and cooperatively work through a good-faith scheduling error, this judge (and probably other judges) considers the need to resolve such a dispute somewhat embarrassing.

The question posed by HP's motion, however, is not whether the parties behaved unprofessionally or childishly. The question is whether SDI disobeyed a court order, and acted in bad faith or caused discovery violations.

Both parties cite to cases holding that a court should impose sanctions only for willfulness, bad faith or fault. HP points the court to Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 386 (7th Cir. 2008), in which the Seventh Circuit stated, "In order to impose sanctions pursuant to its inherent power, a court must find that the party '"acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ."'" (citing Methode Elecs., Inc. v. Adam Techs, Inc., 371 F.3d 923, 928 (7th Cir. 2004)). SDI refers the court to Langley by Langley v. Union Elec. Co., 107 F.3d 510, 514 (7th Cir. 1997), where the Seventh Circuit said that "Rule 37 sanctions may only be imposed where a party displays 'willfulness, bad faith, or fault.'" (citing Philips Med. Sys. Int'l, B.V. v. Bruetman, 982 F.2d 211, 214 (7th Cir. 1992)). "Conduct which constitutes bad faith includes 'intentional or reckless disregard' of the

15

rules." Woods v. Chicago Transit Auth., No. 04-C-04124, 2006 WL 2461618 at *2 (N.D. Ill. 2006) (quoting Marrocco v. General Motors Corp., 966 F.2d 220, 224 (7th Cir. 1992)). The Seventh Circuit defines "fault" as being "unconcerned with the non-complying party's subjective motivation, but rather 'only describe[ing] the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation.'" Langley by Langley, 107 F.3d at 514 (quoting Marrocco, 966 F.2d at 224).

The Seventh Circuit has held that in order for a district court to impose the "draconian" sanction of dismissal as a Rule 37 sanction, the district court must have "clear and convincing evidence" of willfulness, bad faith or fault. Maynard v. Nygren, 332 F.3d 462, 467-68 (7th Cir. 2003). HP does not request dismissal. Rather, it asks the court to award it attorneys' fees "in an amount to be agreed upon by HP and SDI within seven days" of the court's order, and if they can't agree, in an amount determined by the court. Dkt. No. 64-1 at 6. Arguably, the "clear and convincing" standard of proof does not apply to a request for attorneys' fees. Still, the court must consider whether imposition of sanctions of any kind would effectuate the three purposes of Rule 37: "(1) ensuring the disobedient party does not benefit from non-compliance; (2) obtaining compliance with discovery orders; and (3) providing a general deterrent in the particular case and litigation in general." Woods, 2006 WL 2461618 at *2 (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639 (1976)).

16

Judge Clevert required the parties to complete jurisdictional discovery by May 30, 2014. Dkt. No. 37 at 7. By May 23, 2014, SDI had provided HP with its answers to HP's interrogatories and with its responses to HP's requests for production, but those answers and responses produced little in the way of information. No 30(b)(6) deposition had taken place. By May 30, 2014, therefore, the parties had *not* completed jurisdictional discovery.

The parties have argued over whether this failure to timely complete the discovery was the result of SDI's willful refusal to obey Judge Clevert's discovery order. The answer to this question depends to some extent on where, in the April 23-to-May 23, 2014 timeline one looks. In April and early May, 2014 SDI appears to have been trying to work out dates for the 30(b)(6) deposition, and thus arguably was complying with Judge Clevert's order. By the end of May, SDI had demanded that HP withdraw the deposition notice, and had stated that it might not ever produce a witness. And it appears that the dearth of information SDI provided in the way of written discovery may have been a "you don't cooperate, we won't play" response to HP's continued insistence on a 30(b)(6) deposition. Arguably, by this time, SDI was refusing to comply with Judge Clevert's order.

Whether SDI's actions constituted "willful" refusal, however, isn't critical to the court's determination regarding sanctions, because the Seventh Circuit also has indicated that a district court may impose sanctions for "fault." Langley by Langley, 107 F.3d at 514. Fault is "not a catch-all for any minor blunder . . . [but] suggests objectively unreasonable behavior; it does not

17

include conduct that [a district court] would classify as a mere mistake or a slight error in judgment." Rosenthal Collins Group, LLC v. Trading Techs. Intern., Inc., 2008 WL 2783185 at *2 (N.D. Ill. July 17, 2008) (quoting Long v. Steepro, 213 F.3d. 983, 987 (7th Cir. 2007)). Fault does not look at a party's subjective motives, but looks rather at whether the party's actions, or failure to act, were reasonable. Langley by Langley, 107 F.3d at 514 (citations omitted).

The court concludes that regardless of whether SDI's conduct was willful, or constituted bad faith, it was not reasonable. SDI was the party that brought the motion to dismiss for lack of jurisdiction. It was within the realm of reason for HP to request some discovery on the question of whether SDI did, in fact, have requisite ties to Wisconsin. HP made that request, and Judge Clevert granted it. For reasons that aren't entirely clear, SDI journeyed from agreeing to provide a witness and respond to written discovery to indicating that it might not ever produce a witness and producing, not discovery, but objections to discovery. To top it all off, when Judge Clevert informed SDI in July 2014 that just objecting wasn't enough—that it needed to produce information—SDI responded by withdrawing its motion, allegedly as a cost-saving measure.

This last fact—SDI's withdrawal of the motion to dismiss when it realized that it was going to have to produce discovery on SDI's ties to Wisconsin—is the most puzzling and least reasonable. SDI has argued that it made the decision to withdraw after conducting a "cost-benefit" analysis, and determining that it would not be cost-effective to pursue the motion to dismiss. One wonders how SDI could have concluded that withdrawing the motion to

18

dismiss was more cost-effective than staying in the litigation. True, searching documents for information on SDI's ties to Wisconsin, as well as producing a 30(b)(6) representative, would cost money. But if SDI prevailed on its motion to dismiss, it would be free of the litigation entirely, as well as free from the possibility that it could be subjected to a liability determination (at least in this case). Instead, by withdrawing the motion to dismiss, SDI has remained involved in this contentious litigation for more than a year since withdrawing the motion, and the end is not yet near, as far as the court can tell.

In the face of these facts, the court determines that SDI's conduct was not just a "minor blunder," "mere mistake," or "a slight error in judgment." Rosenthal Collins Group, LLC, 2008 WL 2783185 at *2. SDI's conduct was "objectively unreasonable." Id. It was SDI's decision to object to all of the written discovery requests, to indicate that it might never produce a 30(b)(6) witness, and eventually to withdraw its motion, which "eventually culminated in the violation" of the discovery rules. Id. For that reason, the court finds that SDI did violate Rule 37(c)(1) by failing to disclose information and identify a witness within the time period specified by Judge Clevert's order, and that sanctions under Rule 37(c)(1)(A) are warranted, and are appropriate.

### III. CONCLUSION

For the reasons stated above, the court finds that third-party defendant Samsung SDI Co., Ltd. violated Rule 37(c)(1). The court **GRANTS** Hewlett-Packard's motion for costs against third-party defendant Samsung SDI Co., Ltd. Dkt. No. 64. The court **ORDERS** that Samsung SDI Co., Ltd. shall pay

19

sanctions to Hewlett-Packard Co., in the form of HP's costs and attorneys' fees. The court **ORDERS** that, by **Friday, October 9, 2015**, the parties shall confer with regard to the appropriate amount of costs and fees. If the parties cannot agree on an appropriate amount by Friday, October 9, 2015, HP shall provide the court with written notice of that fact, accompanied by an affidavit as to the amount of costs and fees it claims.

Dated in Milwaukee this 30th day of September, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge