UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

S.V. GOPALRATNAM,
HEMALATHA GOPALRATNAM,
THE ESTATE OF ARUN GOPALRATNAM, and
AMERICAN FAMILY MUTUAL INSURANCE CO.,

           Plaintiffs,

Case No. 13-cv-618-PP

v.

HEWLETT-PACKARD CO., and
ABC INSURANCE COMPANY,

           Defendants,

SAMSUNG SDI CO., LTD.,
DYNAPACK TECHNOLOGY CORP., and
HEWLETT-PACKARD CO.,

           Third-Party Defendants.

---

**ORDER REGARDING DEFENDANTS' ANTICIPATED MOTION TO COMPEL PLAINTIFFS TO SUBMIT TO SECOND DEPOSITIONS**

---

On March 3, 2015, the defendants took the depositions of plaintiffs Hemalatha Gopalratnam, Dkt. No. 114, and S.V. Gopalratnam, Dkt. No. 115. During the deposition of plaintiff Hemalatha Gopalratnam, counsel for defendant and third-party defendant Hewlett-Packard Company asked a question about the medical history of the Gopalratnam's son, Arun. Hemalatha Gopalratnam Dep. Tr., Dkt. No. 114, at 67: 6. Counsel for the plaintiffs objected to the relevance of the line of questioning, and also argued that the line of questioning appeared to be likely to elicit answers that contained privileged information. Id. 67: 7-20. In the middle of the debate that followed,

1

counsel for the plaintiffs indicated that he was willing to "designate this particular line of questioning as highly confidential, preserving my objection to the confidentiality . . .," and he indicated that if the defendants were to stipulate that they wouldn't use the answers as testimony or tender them to experts without the court approval, he'd allow his client to answer. Id. 75: 20-25; 76: 1-18.

This offer led to a discussion of whether counsel for the plaintiffs was claiming that conversations Arun might have had with his parents were privileged. Id. 77: 19. Counsel for the plaintiffs indicated that information communicated "to and from the medical . . . practitioners" was privileged. Id. 79: 18-25. Counsel for Dynapack indicated that he might agree that communications to the plaintiffs from doctors should be confidential, but stated that he did not agree that anything Arun might have told the plaintiffs was confidential. Id. 81: 16-25.[1] Counsel for the plaintiffs responded that he was not objecting to the defendants asking about direct communications between Arun and his parents, but was objecting to any argument that "vitiate[d] any expected confidentiality relative to the communications made by and between Arun, [the doctors] and parents . . . ." Id. 82: 13-25.

The lawyers continued the debate, working their way around to the fact that the defendants had asked the plaintiffs to sign releases for medical records. Counsel for the plaintiffs stated for the record that the plaintiffs would

---

[1] The attorneys use the words "confidential" in some places, "privilege" in others, without necessarily making a distinction. Counsel for the plaintiffs had offered to treat the line of questioning as "highly confidential."

2

not sign the authorizations. Id. 90: 7-11. Counsel for the plaintiffs asserted again that he was not going to agree to the defendants asking the plaintiff questions about what doctors told her, but that he did not object to them asking her questions about her own personal observations and knowledge. Id. 87: 22-25; 88: 1-25.

At the end of the debate, before the parties resumed questioning Hemalatha Gopalratnam, counsel for the plaintiffs again stated that he was "inclined . . . to designate certain portions of the line of questioning here as highly confidential relative to the . . . health issue that we've discussed, and, you know, I guess we'll see where it lies, but I want to make it clear to everybody . . . that we are not waiving any privilege, we are not waiving the relevance issue, and we are steadfastly attempting to preserve that privilege." Id. 92: 2-10.

When the defendants resumed questioning Hemalatha Gopalratnam, they asked her questions about whether she'd discussed certain medical events with her son; her understanding of a particular medical event; details of treatment; and her perceptions of her son's health. Id., 3-8; 95-103: 24

During the deposition of S.V. Gopalratnam, the parties did not repeat the debate they'd held regarding confidentiality and privilege. When counsel for Hewlett-Packard began to ask questions regarding a medical incident, counsel for the plaintiffs stated, "Just going to designate this as highly confidential." S.V. Gopalratnam Dep. Tr., Dkt. No. 115, at 81: 7-8. The defendants asked plaintiff only a handful of questions regarding his knowledge of a particular

3

medical incident, his conversations with his son, follow-up treatment, and his perceptions of his son's health. Id., 81-86.

A little over a month after these depositions took place, defendant Hewlett-Packard filed a motion asking the court to compel the plaintiffs to sign the medical record releases the parties had discussed during Hemalatha Gopalratnam's deposition. Dkt. No. 78. The plaintiffs objected. Dkt. No. 81. Hewlett-Packard filed a reply. Dkt. No. 85. The court held a hearing on the motion, and on May 21, 2015, granted the motion to compel and ordered the plaintiffs to sign the releases. Dkt. No. 94. The court also ordered, at the request of the plaintiffs, that the records produced as a result of the releases be filed under seal with the court for *in camera* inspection. Id.

On September 9, 2015, the plaintiffs filed the records with the court, under seal. Dkt. No. 105. The court reviewed the records, and on October 29, 2015, ordered the plaintiffs to turn over to the defendants certain portions of the records. Dkt. No. 112. Due to some confusion with the way the court referenced the documents to be turned over versus the way the plaintiffs had organized the documents when filing them, the court held another hearing on November 12, 2015 to clarify the order. Dkt. No. 113. Shortly thereafter, the plaintiffs turned the records the court had identified over to the defendants.

Several weeks later, the parties contacted the court's staff and asked that the court schedule a hearing on a discovery issue. The hearing was scheduled for December 17, 2015. At the beginning of the hearing, counsel for defendant Dynapack told the court that the parties had requested the hearing as a "pre-

4

motion conference" pursuant to the Local Rules Committee Comments to Fed. R. Civ. Proc. 16(b)(3)(B)(v). The defendants were considering filing a Rule 37 motion to compel both of the plaintiffs to appear for another deposition. See Dkt. No. 116. Counsel told the court that at the March 3 depositions, the defendants had asked the plaintiffs questions about their conversations with their son's medical providers. He indicated that the plaintiffs had testified that they did not have conversations with their son's medical providers. He told the court that the medical records the defendants only recently had received indicated to the contrary—that the plaintiffs had been involved with the medical providers in their son's treatment. Counsel argued that the defendants needed the substance of those communications; they had recently retained a forensic expert who'd indicated that she'd need the substance of those communications in order to form her expert opinions.

Counsel for the plaintiffs objected to the plaintiffs being put through another round of questioning about their son's death. He argued that the plaintiffs actually had asked questions about this topic at the deposition, and that while he'd objected to some of those questions, the defendants had gotten the information they now claimed not to have received. He also argued that, given the fact that discovery had closed, it was inappropriate for the defendants to try to retain an expert.

The court asked the parties to file the deposition transcripts (restricted from public viewing), so that it could determine whether the defendants had, in fact, been able to ask questions about the plaintiffs' communications with their

5

son's medical providers. The parties filed the transcripts on the same day. Dkt. Nos. 114, 115.

The above history indicates the following:

The defendants had provided the plaintiffs with medical records releases prior to the March 3, 2015 depositions. Counsel for the plaintiffs made clear, on the record at Hemalatha Gopalratnam's deposition, that the plaintiffs were refusing to sign those authorizations. As of March 3, 2015, then, the defendants did not have any medical records, and the parties were aware that the defendants were going to ask the court to compel the plaintiffs to do so.

During the March 3, 2015 deposition of Hemalatha Gopalratnam, counsel for the plaintiffs made clear that he considered any conversations between the plaintiffs and their son's medical providers to be confidential, and that he would not agree to any such line of questioning. The defendants—at least defendant Hewlett-Packard—agreed not to ask questions on that topic due to the plaintiffs' objections (particularly in light of the fact that the question of whether the plaintiffs must release the medical records was going to go before the court). The defendants did not ask Hemalatha or S.V. Gopalratnam any questions about conversations they had with their son's medical providers. The questions they asked the plaintiffs at the March 3, 2015 depositions related only to what the plaintiffs knew of their son's medical issues, some details of treatment, and how they perceived his health condition.

Slightly over a month after the depositions, on April 17, 2015, defendant Hewlett-Packard filed the motion to compel the plaintiffs to sign the medical

6

releases. The deadline for completing all discovery had been set by Judge Charles N. Clevert for April 30, 2015. Dkt. No. 62. The motion to compel was not fully briefed until May 5, 2015—after the close of discovery—and the court did not rule until May 21, 2015. It then took the plaintiffs some three and a half months—until September 9, 2015—to provide the court with the medical records for its *in camera* review. The court decided which records needed to be turned over on October 29, 2015, and clarified that order on November 12, 2015. The defendants received the medical records mid-November, 2015.

The court does not agree with the plaintiffs' assertion at the December 17, 2015 hearing that the defendants were able to ask questions at the March 3, 2015 depositions about the plaintiffs' conversations with their son's medical providers. Rather, the court concludes from its review of the transcript that, in the face of the plaintiffs' strenuous argument that conversations between the plaintiffs and Arun's medical providers were privileged, and the plaintiffs' decision not to sign the medical record releases without a court order, the defendants agreed to refrain from asking questions about the plaintiffs' conversations with the medical providers at the March 3 depositions. The parties knew that Hewlett-Packard would ask the court to rule on the question of whether the records were privileged, and the Hemalatha Gopalratnam transcript indicates that defense counsel agreed, in essence, to refrain from asking questions that might tread any privileged ground until the court had issued a ruling.

7

The court did, eventually, issue that ruling. The court found that a number of the medical records had to be disclosed. Given that, the defendants now have parameters for areas into which they may and may not enquire—parameters they did not have on March 3, 2015.

The court reiterates what it has said in the past—it does not take lightly the fact that being subjected to questioning about the loss of their child is emotionally extremely painful for the plaintiffs. The court must, however, balance that pain with the defendants' right to present their defense. The defendants did not ask the questions they wanted to ask at the March 3, 2015 depositions, because of the plaintiffs' privilege objections. The court since has resolved those objections—for the most part, in favor of the defendants. The court concludes, therefore, that if the defendants were to file a motion asking the court to compel Hemalatha and S.V. Gopalratnam to submit to limited depositions, confined solely to the topic of the conversations the plaintiffs had with their son's medical providers regarding the particular medical incident that was the subject of the debate during Hemalatha Gopalratnam's March 3 deposition, the court likely would grant that motion.

If, as a result of this decision, the plaintiffs agree to appear for depositions without a court order compelling them to do so, the court strongly suggests that the parties notify the court of the date and time of the depositions. The court will, if at all possible, make itself available by telephone on that day, in the event that the parties disagree regarding appropriate

8

questions, so that the parties may consult with the court without having to suspend the depositions.

Dated in Milwaukee, Wisconsin this 6th day of January, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge